40 F.3d 1246
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Arvis KIDD, Petitioner-Appellant,
v.
Jeff HOOD; Grant Woods, Attorney General, Respondents-Appellees.
 No. 93-16857.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1994.
Decided Nov. 23, 1994.
 
 Before: SNEED, PREGERSON, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Arvis Kidd was convicted by a jury in Arizona state court on one count of burglary and one count of theft; in a separate case he pled no contest to one count of attempted burglary. After exhausting state remedies, Kidd sought a writ of habeas corpus, arguing that he was denied his Sixth Amendment right to effective assistance of counsel and that his due process rights were violated by various errors at trial. The district court denied Kidd's motion for an evidentiary hearing and denied his habeas petition. We have jurisdiction pursuant to 28 U.S.C. Sec. 2253, and we affirm.
 
 FACTS
 
 3
 Ms. "F.'s" house was burglarized on November 22, 1987. As Ms. F. was driving toward her home, she saw a man in her front yard carrying her child's stuffed toy monkey and other items. She yelled at him and then got out of her car and chased him down the street, until he drove off in a white car. Ms. F. discovered that various items were missing from her home. She gave the police a description of the man and the car, including a partial license plate number. She also helped the police develop a composite drawing of the man.
 
 
 4
 Over several weeks, Ms. F. reviewed four different photographic lineups. She identified one photograph in the second lineup and one in the fourth lineup as "resembling" the person on her property. The photograph Ms. F. selected from the fourth lineup was of Kidd.
 
 
 5
 Kidd pled not guilty and was represented at trial by appointed counsel. Ms. F. identified Kidd in the courtroom during trial, without objection from Kidd's attorney. Kidd was convicted of burglary and theft. The jury indicated on a special verdict form that the value of the items taken exceeded $1,000. On the basis of that valuation, Kidd's theft conviction was for a third class felony.
 
 
 6
 Following his conviction, Kidd was offered a plea agreement in a separate case. That case involved one count of attempted burglary. At a hearing on June 3, 1988, Kidd rejected the agreement and expressed dissatisfaction with his appointed counsel. The trial court questioned Kidd about his reasons for requesting a new attorney and ultimately denied Kidd's request.
 
 
 7
 On the morning that the trial for attempted burglary was to begin, Kidd decided to plead no contest. The state's evidence, as described at the plea hearing, showed that Kidd had been caught in the act of breaking into a house and was held by the occupant and an eyewitness neighbor until the police arrived. Kidd was represented by the same appointed attorney who had represented him in the earlier burglary and theft trial. Before accepting Kidd's plea, the trial judge questioned him about his decision to plead and informed him of the rights he was giving up.
 
 
 8
 Kidd was sentenced to fifteen years each on the burglary and theft convictions and twelve years for the attempted burglary. All terms were to be served concurrently.
 
 
 9
 Kidd petitioned for post-conviction relief in state court, asserting that he had been denied effective assistance of counsel at trial and that his no contest plea was not voluntarily or intelligently made. The trial court held an evidentiary hearing, at which Kidd was represented by new appointed counsel. Kidd was the only witness called to testify. The trial court rejected both of Kidd's claims.
 
 
 10
 On direct appeal, the state intermediate appellate court issued a detailed opinion affirming the convictions and rejecting all Kidd's claims of error. The state supreme court denied his petition for review.
 
 
 11
 Kidd sought habeas corpus relief in federal district court, alleging that he had been denied his Sixth Amendment right to counsel and his right to a fair trial. As a basis for these claims, Kidd reasserted the same four trial errors he had raised in state court. The district court denied Kidd's habeas petition and also denied his motion for an evidentiary hearing. On appeal to this court, Kidd reasserts the four arguments made below and also argues that the lower court erred by refusing to hold an evidentiary hearing.
 
 DISCUSSION
 
 12
 A district court's decision to grant or deny a habeas corpus petition is reviewed de novo. Thomas v. Brewer, 923 F.2d 1361, 1364 (9th Cir.1991). The district court's findings of fact are reviewed under the clearly erroneous standard. Id.
 
 
 13
 Even if the state trial court committed error, federal courts only grant habeas corpus relief in those rare cases where the error is "structural" (i.e., the error affects "basic elements" of the trial), or where a non-structural "trial error" causes "actual prejudice." Hardnett v. Marshall, 25 F.3d 875, 879 (9th Cir.1994) (citing Brecht v. Abrahamson, 113 S.Ct. 1710 (1993)). We agree with the district court that none of Kidd's claims warrants habeas relief.
 
 
 14
 I. THE DISTRICT COURT'S FAILURE TO HOLD AN EVIDENTIARY HEARING
 
 
 15
 Kidd's request for an evidentiary hearing was denied by the district court.[1] A habeas petitioner is entitled to an evidentiary hearing on a claim when "(1) the petitioner's allegations, if proved, would entitle him to relief, and (2) the state court trier of fact has not, after a full and fair hearing, reliably found the relevant facts." Hendricks v. Vasquez, 974 F.2d 1099, 1103 (9th Cir.1992) (quotation omitted). Conversely, the district court need not grant a hearing "if either the state court has reliably found the relevant facts, or there are no disputed facts and the claim presents a purely legal question." Id. (citations omitted). The district court properly denied Kidd's motion for an evidentiary hearing because Kidd is not entitled to relief on any of his claims, as a matter of law.[2]
 
 
 16
 II. INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL
 
 
 17
 Kidd alleges that he was denied effective assistance because his attorney failed to challenge Ms. F.'s in-court identification of him. To prevail on an ineffective assistance claim, Kidd must show (1) that his trial counsel's performance was "outside the wide range of professionally competent assistance," and (2) a "reasonable probability" that, but for counsel's deficient performance, the outcome of his trial would have been different. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). The focus of Strickland 's second "prejudice" prong is whether the result of the proceeding was fundamentally unfair or unreliable. Lockhart v. Fretwell, 113 S.Ct. 838, 842 (1993); United States v. Palomba, 31 F.3d 1456, 1460-61 (9th Cir.1994).
 
 
 18
 We will assume without deciding, as did the state courts and the district court, that trial counsel's failure to challenge Ms. F.'s in-court identification did fall below the standards of professional conduct, and thus we assume Kidd has satisfied Strickland 's "performance" prong. Nevertheless, we agree with the state and lower courts that Kidd fails Strickland 's second prong because he was not prejudiced by his counsel's alleged deficiency.
 
 
 19
 If trial counsel had challenged Ms. F.'s in-court identification on the ground that it had been tainted by the pretrial identification procedure, Kidd would have been entitled to a hearing to determine whether the pretrial procedure was in fact unduly suggestive. State v. Dessureault, 453 P.2d 951, 955 (Ariz.1969), cert. denied, 397 U.S. 965 (1970). At the hearing, it would have been the state's burden to prove by "clear and convincing evidence" that the pretrial procedure was not unduly suggestive and did not taint the in-court identification. Id. Even if the state failed to satisfy this burden, the in-court identification nevertheless would be admissible if it had an independent basis. Id.
 
 
 20
 Even if, contrary to the state appellate court's conclusion and the district court's suggestion, we assume the pretrial procedure was unduly suggestive, we find Ms. F.'s in-court identification admissible because it had an independent basis.[3] An in-court identification is admissible despite a tainted pretrial procedure if it is sufficiently reliable under the "totality of the circumstances." Neil v. Biggers, 409 U.S. 188, 199 (1972). Factors bearing on the reliability of the identification include:
 
 
 21
 the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
 
 
 22
 Id. at 199-200.
 
 
 23
 Ms. F. testified at trial that she had observed the man in the middle of the day, with good weather and lighting conditions. Although he was holding a wallet in his mouth so that his chin was obscured, he "looked right at [her]" from a distance of approximately four feet. Ms. F. further observed the man as she chased him down the street. She described him as very dark complected, tall (6'0" or 6'1"), slim, with big eyes and a thin mustache. She also assisted the police in creating a composite drawing, which the state appellate court described as "apparently ... a fairly good likeness of the defendant." Ms. F. also was able to describe the getaway car, including some of the letters from its license plate. The trial was approximately six months after the burglary, and Ms. F. stated at trial that she was "a hundred percent sure" that Kidd was the man she had seen leaving her property.
 
 
 24
 Because the in-court identification had an independent basis, there is no "reasonable probability" that a Dessureault hearing would have produced a different outcome ( see Strickland, 466 U.S. at 694), or that counsel's actions rendered the outcome of the trial fundamentally unfair or unreliable[4] ( see Lockhart, 113 S.Ct. at 842). Kidd therefore is not entitled to relief on his ineffective assistance claim.
 
 III. NO CONTEST PLEA
 
 25
 Kidd argues that his no contest plea to the charge of attempted burglary was not made voluntarily or intelligently, in violation of Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). The state trial court thoroughly inquired into Kidd's decision to plead. The judge informed Kidd of the sentence he could receive, the rights he was giving up by pleading, and the effect of a no contest plea; Kidd affirmed that he had received no promises in return for his plea and that it was being entered "voluntarily and of [his] own free will." Moreover, the trial court was aware that the defendant had decided to plead without participation or concessions from the state,[5] and that as a result there was a special need to ensure that the plea was freely and voluntarily given.
 
 
 26
 Where, as Kidd alleges here, a defendant enters a plea without the benefit of competent counsel, courts are more suspicious of the voluntariness of the plea. See Brady v. United States, 397 U.S. 742, 748 n. 6 (1970). Unlike the typical case, however, Kidd does not assert that he received ineffective assistance in his decision to plead. Instead, he asserts that his fear of ineffective assistance if he went to trial, based on his prior trial experience with the same attorney, "coerced" his plea and rendered it involuntary. However, as discussed in Section II, supra, the allegedly coercive factor--counsel's ineffectiveness at the previous trial--did not in fact exist. Kidd's involuntary plea claim therefore must fail.
 
 
 27
 IV. TRIAL COURT'S REFUSAL TO GRANT A MISTRIAL
 
 
 28
 Kidd argues that the trial court should have granted his motion for a mistrial in the burglary and theft case because a state witness testified, in violation of a pretrial order, that Kidd was in possession of a friend's car without permission at the time of the crime. The state courts agreed that the testimony was inadmissible, but held, under state law, that a mistrial was not required because the evidentiary error was harmless beyond a reasonable doubt.
 
 
 29
 Habeas relief would be warranted on this claim only if the trial court's refusal to declare a mistrial "so fatally infected the proceedings as to render them fundamentally unfair." Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir.1991). We conclude that it did not.
 
 
 30
 It is very unlikely that receipt of the inadmissible testimony affected the jury's verdict. The testimony was not relevant to the elements of the charged offenses and so it did not render conviction more likely by improperly bolstering the state's case. Cf. Hardnett, 25 F.3d at 879 (finding that state court's failure to declare mistrial was error where inadmissible testimony was particularly relevant and there was blatant prosecutorial misconduct). In light of the other evidence of guilt, it is also unlikely that Kidd's conviction hinged on an impermissible inference about his character drawn from evidence of a not particularly reprehensible prior bad act. Ms. F.--who saw Kidd on her property, chased him down the street, and helped police develop a composite drawing--identified Kidd; she provided a description and partial license plate number of a car sometimes driven by Kidd; and Kidd was in possession of a toy stuffed monkey identified as Ms. F.'s.
 
 V. JURY INSTRUCTIONS ON THE THEFT CHARGE
 
 31
 Kidd argues that the trial court erroneously failed to instruct the jury that on the theft charge they had to find that the value of property taken exceeded $1,000 beyond a reasonable doubt.[6] As a result, Kidd asserts, the jury might have convicted him on a standard less than "beyond a reasonable doubt."
 
 
 32
 Even if the state trial court gave an erroneous jury instruction, habeas relief is not warranted here because the instruction, "considered in the context of the instructions as a whole and the trial record," did not " 'so infect[ ] the entire trial that the resulting conviction violates due process.' " Estelle v. McGuire, 112 S.Ct. 475, 482 (1991) (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)); Suniga v. Bunnell, 998 F.2d 664, 666-67 (9th Cir.1993).
 
 
 33
 The trial court did instruct the jury that the state must prove all elements beyond a reasonable doubt; the jury stated in an interrogatory that the value of property taken exceeded $1,000; there was abundant evidence in the record that the value of stolen property substantially exceeded $1,000; and both the state and defense emphasized during closing argument that the state had to prove each element of the offense beyond a reasonable doubt.
 
 CONCLUSION
 
 34
 For the foregoing reasons, the district court's denial of Kidd's motion for an evidentiary hearing and its denial of his habeas corpus petition are AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Before the district court, Kidd requested an evidentiary hearing on all of his claims, but on appeal, he argues only that he is entitled to an evidentiary hearing on his ineffective assistance claim. As discussed infra, we conclude that none of his claims requires an evidentiary hearing
 
 
 [2]
 Our conclusion that none of Kidd's claims entitles him to relief makes it unnecessary to discuss the adequacy of his evidentiary hearing in state court. We note, however, that the only evidence Kidd claims should have been presented to render the state hearing "full" and "fair"--testimony by his trial counsel and by "experts" on standards of attorney competence--goes to show that his attorney's performance was deficient. This additional evidence does not bolster the "prejudice" component of Kidd's ineffective assistance claim, which is the component we conclude is lacking (see infra Section II)
 
 
 [3]
 Whether there is an independent basis for the identification is a mixed question of law and fact reviewed de novo. Tomlin v. Myers, 30 F.3d 1235, 1241 & n. 12 (9th Cir.1994)
 
 
 [4]
 In fact, fundamental unfairness or unreliability is especially unlikely in light of defense counsel's extensive cross-examination of Ms. F. and his closing argument challenging her identification of Kidd
 
 
 [5]
 The state made clear that the former plea agreement, which Kidd had rejected, was no longer available and that the state was ready and willing to proceed to trial
 
 
 [6]
 The record does not indicate whether Kidd timely objected to the relevant jury instructions. However, the state appellate court considered the challenge and the state has never asserted that a procedural default occurred. This court therefore may consider the claim on the merits. Panther v. Hames, 991 F.2d 576, 580 (9th Cir.1993)